UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN BOSCARINO, ELLEN GOODNOE,
MICHAEL RUSSELL, CHERYL WINAY,

       Plaintiffs,                                          Case No.

v.                                                            Hon.

THE AUTO CLUB GROUP,

       Defendant.

---

Noah Hurwitz (P74063)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs Dawn Boscarino, Ellen Goodnoe, Michael Russell, and Cheryl Winay, by and through their attorneys, NACHT LAW P.C., and state the following:

## INTRODUCTION

This is an employee rights lawsuit against Defendant The Auto Club Group ("Defendant") that was triggered by the unlawful termination of four employees for the exact same unlawful reason.  As Defendant admits in four respective September 28, 2020 "Termination Reports," Plaintiffs were reprimanded and eventually fired

1

for posting comments on the Facebook social media platform on or around July 21, 2020 that were "perceived as derogatory toward African Americans." In fact, the comments were not illustrative of racial bias in any manner whatsoever. It was ironically Defendant that harbored a racial animus by terminating four exemplary Caucasian employees with a combined 66 years of experience serving Defendant when Plaintiffs would not have been terminated but for the fact that they were Caucasian. Based on the facts in this matter, there is no doubt that Plaintiffs would have kept their jobs had they been a different race and all other facts had remained the same.

## JURISDICTION AND PARTIES

1. Plaintiff Dawn Boscarino is an individual residing in the Township of Macomb, County of Macomb, State of Michigan.

2. Plaintiff Ellen Goodnoe is an individual residing in the City of North Branch, County of Lapeer, State of Michigan.

3. Plaintiff Michael Russell is an individual residing in the City of New Boston, County of Wayne, State of Michigan.

4. Plaintiff Cheryl Winay is an individual residing in the City of St. Clair Shores, County of Macomb, State of Michigan.

5.  Defendant, The Auto Club Group, is a Michigan domestic non-profit corporation with its principal place of business in Dearborn, Michigan in the County of Wayne.

6.  This action arises under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.1101, *et seq*.

7.  This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiffs' state law claims.

8.  Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and where the events giving rise to Plaintiffs' claims took place.

9.  The facts and unlawful employment practices within the meaning of Title VII, Section 1981, the ELCRA, giving rise to this Complaint occurred within the Eastern District of Michigan.

10. Defendant is an employer and Plaintiffs were its employees at all relevant times within the meaning of Title VII, Section 1981 and the ELCRA.

## FACTUAL ALLEGATIONS

11. Plaintiffs incorporate by reference herein the allegations contained in the foregoing paragraphs.

12. Plaintiffs are Caucasian.

### Plaintiff Dawn Boscarino's Allegations

13. Plaintiff Dawn Boscarino was hired by Defendant on or about November 25, 1996.

14. Plaintiff Boscarino was most recently employed as a Claims Representative.

15. Plaintiff Boscarino had no former discipline or performance issues as an employee of Defendant for 24 years.

16. In Plaintiff Boscarino's 2019 Performance Review, it was determined that she met or exceeded all expectations.

17. On or around July 21, 2020, Plaintiff Boscarino shared a Facebook post with her work colleagues.

18. The Facebook post depicted three female Caucasian protestors lying in a roadway, obstructing traffic.

19. Plaintiff Boscarino commented "WTF, these peeps need to get a job. What has this world come to.  The police can't even do their job."

20. On September 29, 2020, Plaintiff Boscarino received a letter that she was terminated for posting comments on Facebook that were perceived by Defendant as "derogatory toward African-Americans."

21. The comments were not derogatory toward African-Americans.

22. The photo does not have African-American individuals in it.

23. Defendant perceived Plaintiff Boscarino's comments as a criticism of African-American protestors and terminated her because she was Caucasian.

24. Plaintiff Boscarino would not have been terminated but for the fact that she was Caucasian.

25. Plaintiff Boscarino would have kept her job if she had been a different race and all other facts had remained the same.

26. Upon information and belief, similarly situated non-Caucasian employees have supported or criticized protesters on various social media platforms and have not been terminated for doing so.

27. Defendant must allow employees of all races to post non-derogatory messages on social media platforms.

28. Plaintiff Boscarino filed a timely charge of discrimination with the EEOC alleging discrimination on the bases of her race and retaliation on January 29, 2021.

29. Plaintiff Boscarino's charges were filed within 300 days of the unlawful employment practices alleged in this claim.

30. Plaintiff Boscarino received notice of her right to sue letter from the EEOC on or around March 22, 2021.

### **Plaintiff Ellen Goodnoe's Allegations**

31. Plaintiff Ellen Goodnoe was hired by Defendant on or about November 18, 2002.

32. Plaintiff Goodnoe was most recently employed as a Claims Representative.

33. Plaintiff Goodnoe had no former discipline or performance issues as an employee of Defendant for 18 years.

34. In Plaintiff Goodnoe's 2019 Performance Review, Plaintiff Goodnoe met or exceeded all expectations.

35. On or around July 21, 2020, Plaintiff Goodnoe commented on a Facebook post shared by her colleague.

36. The Facebook post depicted three female Caucasian protestors lying in a roadway, obstructing traffic.

37. Plaintiff Goodnoe commented that the Protestors looked like "speedbumps."

38. On September 29, 2020, Plaintiff Goodnoe received a letter that she was terminated for posting comments on Facebook that were perceived by Defendant as "derogatory toward African-Americans."

39. The comments were not derogatory toward African-Americans.

40. The photo does not have African-American individuals in it.

41. Defendant perceived Plaintiff Goodnoe's comments as a criticism of African-American protestors and terminated her because she was Caucasian.

42. Plaintiff Goodnoe would not have been terminated but for the fact that she was Caucasian.

43. Plaintiff Goodnoe would have kept her job if she had been a different race and all other facts had remained the same.

44. Upon information and belief, similarly situated non-Caucasian employees have supported or criticized protesters on various social media platforms and have not been terminated for doing so.

45. Defendant must allow employees of all races to post non-derogatory messages on social media platforms.

46. Plaintiff Goodnoe filed a timely charge of discrimination with the EEOC alleging discrimination on the bases of her race and retaliation on January 29, 2021.

47. Plaintiff Goodnoe's charges were filed within 300 days of the unlawful employment practices alleged in this claim.

48. Plaintiff Goodnoe received notice of her right to sue letter from the EEOC on or around March 22, 2021.

## Plaintiff Michael Russell's Allegations

49. Plaintiff Michael Russell was hired by Defendant on or about August 14, 2000.

50. Plaintiff Russell was most recently employed as a Claims Representative.

51. Plaintiff Russell had no former discipline or performance issues as an employee of Defendant for 20 years.

52. In Plaintiff Russell's 2019 Performance Review, Plaintiff Russell met or exceeded all expectations.

53. On or around July 21, 2020, Plaintiff commented on a Facebook post shared by his colleague.

54. The Facebook post depicted three female Caucasian protestors lying in a roadway, obstructing traffic.

55. Plaintiff commented "I would like to meet there parents, if my kid did that I would kick his arse."

56. On September 29, 2020, Plaintiff Russell received a letter that he was terminated for posting comments on Facebook that were perceived by Defendant as "derogatory toward African-Americans."

57. The comments were not derogatory toward African-Americans.

58. The photo does not have African-American individuals in it.

59. Defendant perceived Plaintiff Russell's comments as a criticism of African-American protestors and terminated him because he was Caucasian.

60. Plaintiff Russell would not have been terminated but for the fact that he was Caucasian.

61. Plaintiff Russell would have kept his job if he had been a different race and all other facts had remained the same.

62. Upon information and belief, similarly situated non-Caucasian employees have supported or criticized protesters on various social media platforms and have not been terminated for doing so.

63. Defendant must allow employees of all races to post non-derogatory messages on social media platforms.

64. Plaintiff Russell filed a timely charge of discrimination with the EEOC alleging discrimination on the bases of his race and retaliation on January 29, 2021.

65. Plaintiff Russell's charges were filed within 300 days of the unlawful employment practices alleged in this claim.

66. Plaintiff Russell received notice of his right to sue letter from the EEOC on or around March 22, 2021.

### Plaintiff Cheryl Winay's Allegations

67. Plaintiff Cheryl Winay was hired by Defendant on or about April 16, 2016.

68. Plaintiff Winay was most recently employed as a Claims Representative.

69. Plaintiff Winay had no former discipline or performance issues as an employee of Defendant for four years.

70. On or around July 21, 2020, Plaintiff Winay commented on a Facebook post shared by her colleague.

71. The Facebook post depicted three female Caucasian protestors lying in a roadway, obstructing traffic.

72. Plaintiff Winay commented that the Protestors looked like "speedbumps."

73. On September 29, 2020, Plaintiff Winay received a letter that she was terminated for posting comments on Facebook that were perceived by Defendant as "derogatory toward African-Americans."

74. The comments were not derogatory toward African-Americans.

75. The photo does not have African-American individuals in it.

76. Defendant perceived Plaintiff Winay's comments as a criticism of African-American protestors and terminated her because she was Caucasian.

77. Plaintiff Winay would not have been terminated but for the fact that she was Caucasian.

78. Plaintiff Winay would have kept her job if she had been a different race and all other facts had remained the same.

79. Upon information and belief, similarly situated non-Caucasian employees have supported or criticized protesters on various social media platforms and have not been terminated for doing so.

80. Defendant must allow employees of all races to post non-derogatory messages on social media platforms.

81. Plaintiff Winay filed a timely charge of discrimination with the EEOC alleging discrimination on the bases of her race and retaliation on January 29, 2021.

82. Plaintiff Winay's charges were filed within 300 days of the unlawful employment practices alleged in this claim.

83. Plaintiff Winay received notice of her right to sue letter from the EEOC on or around March 22, 2021.

## **COUNT I - DISCRIMINATION IN VIOLATION OF TITLE VII**

**(on behalf of all Plaintiffs)**

84. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

85. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiffs were employees covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

86. Plaintiffs are members of a protected class based on their race (Caucasian).

87. Defendant's actions were motivated by unlawful discrimination against Plaintiffs because of their race.

88. Defendant subjected Plaintiffs to adverse employment actions, including termination, based on their race.

89. Plaintiffs would not have been terminated but for the fact that they were Caucasian.

90. Plaintiffs would have kept their jobs had they been a different race and all other facts had remained the same.

91. Defendant's actions were taken in reckless disregard of Plaintiffs' federally protected civil rights, entitling Plaintiff to punitive damages.

92. As a direct and proximate result of Defendant's actions, Plaintiffs have been placed in financial distress and have suffered a loss of earnings and benefits,

and impairment of their earning capacities and ability to work and will so suffer in the future.

## COUNT II - DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

### (on behalf of all Plaintiffs)

93. Plaintiffs incorporate by reference herein the foregoing paragraphs and allegations.

94. Plaintiffs are Caucasian.

95. During Plaintiffs' employment with Defendant, Defendant violated Plaintiffs' rights by depriving them of their right to the enjoyment of all benefits, privileges, terms and conditions of employment in violation of 42 U.S.C. § 1981(b), as amended.

96. Plaintiffs were treated differently, discriminated against, and eventually terminated because of their race, in whole or in part.

97. During their employment, Plaintiffs have not enjoyed the same benefits, privileges, terms and conditions of employment as have non-Caucasian employees in regards to being terminated for use of social media.

98. Defendant's treatment, practices and policies directed toward Plaintiffs, as more fully described in this complaint, denied Plaintiffs the full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by other citizens in violation of 42 U.S.C. § 1981, as amended.

99. Through Defendant's actions and termination of Plaintiffs, there is ample evidence that Defendant intended to discriminate against Plaintiffs on the basis of their race.

## COUNT III - DISCRIMINATION IN VIOLATION OF ELCRA

### (on behalf of all Plaintiffs)

100. Plaintiffs incorporate by reference herein the foregoing paragraphs and allegations.

101. Defendant employed Plaintiffs within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA").

102. Defendant is an employer within the meaning of the ELCRA.

103. The ELCRA prohibits, among other things, discrimination based upon race.

104. Plaintiffs are Caucasian.

105. Plaintiffs were qualified for their respective positions.

106. Plaintiffs were held to different standards than their non-Caucasian coworkers based on their race.

107. Plaintiffs suffered adverse actions, including suspension and termination, while non-Caucasian employees were retained.

108. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiffs were harmed, and continue to be harmed, in that they have suffered

economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional distress, outrage, humiliation, indignity and disappointment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows:

A. For all Plaintiffs, judgment against Defendant in the amount of Plaintiffs' unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under Title VII, Section 1981 and ELCRA.

B. Award Plaintiffs appropriate equitable relief, compensatory damages, and exemplary damages;

C. For all Plaintiffs, appropriate civil penalties;

D. For all Plaintiffs, all costs, attorneys' fees, and interest incurred prosecuting this claim; and

E. All further relief as the Court deems just and equitable.

Respectfully submitted
NACHTLAW, P.C.

 /s/ Noah S. Hurwitz
Noah S. Hurwitz (P74063)
Attorney for Plaintiffs

Dated: April 21, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN BOSCARINO, ELLEN GOODNOE,
MICHAEL RUSSELL, CHERYL WINAY,

    Plaintiffs,                                  Case No.

v.                                                   Hon.

THE AUTO CLUB GROUP,

    Defendant.

Noah Hurwitz (P74063)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
nhurwitz@nachtlaw.com

## **JURY DEMAND**

NOW COMES Plaintiffs Dawn Boscarino, Ellen Goodnoe, Michael Russell and Cheryl Winay, by and through their attorneys, NACHT LAW P.C., and hereby demand a trial by jury of the issues in the above-captioned cause of action.

                                      Respectfully submitted
                                      NACHTLAW, P.C.

                                       */s/ Noah S. Hurwitz*
                                      Noah S. Hurwitz (P74063)
Dated:  April 21, 2021           Attorney for Plaintiffs